NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE ENCAP GOLF HOLDINGS, LLC and CAPITAL, LLC,<br><br>    Debtors.<br><br>MACTEC DEVELOPMENT CORPORAITON,<br><br>    Appellant,<br><br>        v.<br><br>ENCAP GOLF HOLDINGS, LLC, OFFICIAL UNSECURED CREDITORS COMMITTEE OF ENCAP GOLF HOLDINGS, LLC, and LEXINGTON INSURANCE COMPANY,<br><br>    Appellees. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 08-5178 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions by Appellant, MACTEC Development Corporation ("MACTEC") to dismiss the appeal as moot, to vacate the Bankruptcy Court's Orders regarding arbitration, and to compel arbitration; and upon motion by Appellee Lexington Insurance Company ("Lexington") to stay arbitration. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Appellant's motion to dismiss the appeal as moot is **granted**; Appellant's motion to vacate the Bankruptcy Court's Orders regarding arbitration is **denied** as moot; Appellees motion to stay arbitration is **denied**; and Appellant's motion to compel arbitration is **granted**.

I. B<small>ACKGROUND</small>[1]

**A.  Factual Background**

On October 26, 2000, EnCap Golf Holdings, LLC ("EnCap") entered into a Landfill and Closure Agreement with the Hackensack Meadowlands Development Commission (now known as the New Jersey Meadowlands Commission, "NJMC").  The agreement was amended and restated on March 10, 2003, (the "Development Agreement").  Pursuant to the Development Agreement, EnCap was obligated to provide all services relating to the design, permitting, remediation, closure, and development of four landfills within the New Jersey Meadowlands (the "Project").  EnCap contracted with MACTEC to have MACTEC provide labor, services, and materials as the remediation contractor for the Project.  The final version of this contract dated July 29, 2005, is called the Second Amended and Restated Agreement for Design and Construction Services Relating to the Meadowlands Landfill Closure Project (the "MACTEC Contract").

The MACTEC Contract is unique in that MACTEC contracted with EnCap, but all payments for MACTEC's work were to be made by Lexington or American International Group, Inc. ("AIG"), of which Lexington is a subsidiary.  Unless EnCap "disapproved" a progress payment application submitted by MACTEC, Lexington was required to make payment to MACTEC within thirty-five (35) days of receipt of the request.  This procedure is set forth in Sections 7.05 and 7.06 of the MACTEC Contract.

Pursuant to Section 7.05 of the MACTEC Contract, MACTEC was to simultaneously submit its applications for payment to both Lexington and EnCap. Once submitted, MACTEC's applications for payment were to be reviewed and certified by EnCap, with payment to be made by Lexington.

---

[1] The facts set forth in this Opinion are taken from the parties' respective papers.

2

Since Lexington was not a party to the Contract, to ensure that MACTEC would be paid, the MACTEC Contract specified that EnCap was to obtain a Solid Waste Closure Policy. EnCap obtained the required policy from Lexington (the "Lexington Policy"). Section 9.01(g) of the MACTEC Contract provides in relevant part that:

> (g) Not later than thirty (30) Days following the Contract Date, EnCap will provide evidence to MACTEC that, effective as of the Contract Date, the Solid Waste Closure Policy encompassing and providing coverage for this Second Amended Agreement and the related Scope of Work Document, was and is in effect and includes therein the following language providing to MACTEC a direct right of action against the insurer:

The Lexington Policy provides for arbitration should a controversy arise regarding the Policy. Throughout the course of the Project, MACTEC submitted its applications for payment in accordance with Section 7.05 but did not receive payment. Furthermore, MACTEC did not receive notification that EnCap was rejecting any of the payment requests.

The Lexington Policy vests MACTEC with the right to bring a direct action against Lexington in its own capacity or by stepping into the shoes of EnCap. Therefore, even though MACTEC is not a party to the Policy it can seek its enforcement through arbitration. The Policy further provides that arbitration shall be conducted in accordance with the prevailing Construction Industry Arbitration Rules of the American Arbitration Association (the "AAA").

On February 5, 2009, MACTEC provided notice of a payment dispute to Lexington pursuant to the Lexington Policy. MACTEC argues that this notice triggered Lexington's obligations under the Lexington Policy to resolve the dispute over Lexington's failure to pay the applications for payment in the aggregate amount of $33,731,505. Lexington responded to MACTEC on March 3, 2009, asserting a payment defense that MACTEC's claim was premature due to EnCap's failure to exhaust the Self-Insured Retention ("SIR") clause of the Lexington Policy.

3

### B. Procedural History

EnCap and NJM Capital, LLC each filed a voluntary petition under Chapter Eleven on May 8, 2008. On May 21, 2008, an official committee of unsecured creditors (the "Creditors' Committee") was appointed. On June 25, 2008, MACTEC filed a motion seeking relief from the automatic stay to pursue arbitration against Lexington regarding the Lexington Policy. On July 21, 2008, the Bankruptcy Court held a hearing on the motion. On August 4, 2008, the Bankruptcy Court entered an Opinion and Order denying the motion. On August 13, 2008, MACTEC filed a motion to reconsider. On September 8, 2008, the Bankruptcy Court held a hearing on the reconsideration motion. On September 12, 2008, the Bankruptcy Court entered an Order denying reconsideration. On September 24, 2008, MACTEC filed an appeal to this Court. On February 3, 2009, the Bankruptcy Court dismissed the EnCap bankruptcy. On April 1, 2009, MACTEC filed in this Court a motion to dismiss the Appeal and vacate the Bankruptcy Court's Orders. On March 11, 2009, MACTEC filed a demand for Arbitration with the AAA. On April 16, 2009, Lexington filed a motion to stay arbitration. On May 5, 2009, MACTEC filed a motion to compel arbitration. The AAA is currently holding the arbitration initiated by MACTEC in abeyance pending this Court's ruling on the outstanding motions.

## II. STANDARD OF REVIEW

When deciding whether a matter must be submitted to arbitration, courts must make two inquiries: (1) whether the parties have agreed to arbitrate their claims, and (2) whether the specific dispute falls within the scope of the arbitration agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28. (1985); Hilinski v. Gordon Terminal Serv. Co. of N.J., Inc., 265 Fed. Appx. 66, 68-69 (3d Cir. N.J. 2008). In making these determinations, courts

must be mindful of the federal policy favoring arbitration of disputes. Moses H. Cohen Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Where a contract contains an arbitration clause, a presumption of validity arises which can be overcome only if the court can determine with positive assurance that the clause does not cover the dispute at issue. AT&T Technologies v. Communications Workers of America, 475 U.S. 643, 650 (1986). Moreover, if a plaintiff seeks relief in federal court for a claim that is subject to an arbitration agreement, the defendant is entitled to a stay of the court proceeding pending arbitration, and to an order compelling arbitration. If the plaintiff's entire action is subject to an arbitration agreement, a court may remand the matter to arbitration and close the case. See Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991), aff'd, 972 F.2d 1330 (3d Cir. 1992).

### III.  DISCUSSION

MACTEC seeks to dismiss its appeal and to have vacated the Bankruptcy Court's Orders regarding arbitration. The Bankruptcy Court's Orders, however, pertain to the automatic stay and not the validity of the agreement to arbitrate or the coverage of the arbitration clause. Given that the EnCap bankruptcy has been closed, there is no longer a stay in effect. Lexington argues that the Bankruptcy Court's Orders should have preclusive effect pursuant to the doctrine of issue preclusion. The Court finds as a preliminary matter that MACTEC's appeal is moot and that there is no longer a stay in effect.

Lexington argues that they are not obligated to make payments to MACTEC because the SIR component of the Policy has not been exhausted. For this reason Lexington also argues that it cannot be compelled to arbitrate MACTEC's claims. Lexington further argues that the general rule that motions to modify the automatic stay under 11 U.S.C. § 362 do not have preclusive effect does not

5

apply in this instance. In support, Lexington argues that the Bankruptcy Court had to decide the SIR exhaustion issue conclusively to determine if MACTEC should be granted relief from the stay and be allowed to pursue arbitration.

Bankruptcy Court proceedings regarding motions to stay are meant to be summary hearings of limited effect that have to be concluded within thirty days from the date the motion is filed. Mullarkey v. Tamboer (In re Mullarkey), 536 F.3d 215, 226 (3d Cir. 2008); 11 U.S.C. § 362(e). The summary nature of a motion to lift the stay and the fact that determination of a motion to lift the stay is not a final judgement, negates any claim that the determination should have preclusive effect. Id. Accordingly, the Bankruptcy Court's Orders regarding arbitration are not preclusive and do not have effect beyond the duration of the bankruptcy proceeding.

Given that the bankruptcy proceeding has been concluded and the stay lifted, the issue before the Court is whether the arbitration clause in the Lexington Policy is valid and whether the Court or the arbitrator should determine the arbitrator's jurisdiction.

The Lexington Policy is an insurance agreement between EnCap and Lexington/AIG. MACTEC has been given rights under the agreement to pursue payment from Lexington or AIG should either of these entities fail to pay MACTEC for services rendered pursuant to the MACTEC Contract. Lexington argues that it does not have to pay MACTEC and that it cannot be compelled to arbitrate because the SIR has not been exhausted. While this may be true, this is not the issue before the Court.

Under Section 2 of the Federal Arbitration Act ("FAA'), "an agreement in writing to submit to arbitration an existing controversy arising out of [a transaction involving commerce] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

6

of any contract." 9 U.S.C. § 2; Homa v. Am. Express Co., 558 F.3d 225, 228-229 (3d Cir. 2009). Courts turn to the law of the state governing the agreement at issue to determine if the agreement is valid. Id. Accordingly the Court must determine whether the Lexington Policy is a binding valid agreement.

The Lexington Policy was signed by representatives of Lexington/AIG and EnCap. Lexington has not argued that the Policy's premium was not paid or that the contract is in some other way invalid. Lexington merely argues that a separate clause of the Policy has not been satisfied and that this is a condition precedent to coverage. The Policy contains an arbitration clause at Section VII Paragraph k. Lexington's argument does not address the validity of the arbitration clause or the jurisdiction of the arbitrator. Therefore, the Lexington Policy is a valid agreement wherein the parties freely agreed to submit any controversy arising out of the agreement to arbitration.

The Lexington Policy further provides that an arbitration commenced because of a controversy arising out of the Policy shall be governed by the AAA Construction Industry Rules. These rules expressly vest the arbitrator with the authority to determine if the controversy raised is subject to arbitration. Traditionally, a court determines if a controversy arising from a contract should be arbitrated, however, "clear and unmistakable evidence" that the parties agreed to arbitrate jurisdictional questions will circumvent the traditional rule. General Elec. Co. v. Deutz AG, 270 F.3d 144, 154-55 (3d Cir. 2001) (citing First Options of Chicago, Inc., v. Kaplan, 514 U.S. 938, 944-47 (1995). Here, the fact that the Lexington Policy incorporates the AAA Construction Rules and that Rule 8 of these rules provides that the arbitrator shall have the authority to determine jurisdiction constitutes clear and unmistakable evidence. Therefore, although it appears that the Lexington Policy on its face would not allow for coverage of MACTEC's claims until the SIR is

7

exhausted, whether an arbitrator can hear controversies arising from the arbitration agreement concerning coverage before the SIR is exhausted is a jurisdictional question to be determined by the arbitrator in the first instance.

## IV.   CONCLUSION

For the reasons stated, Appellant's motion to dismiss the appeal as moot is **granted**; Appellant's motion to vacate the Bankruptcy Court's Orders regarding arbitration is **denied** as moot; Appellees motion to stay arbitration is **denied**; and Appellant's motion to compel arbitration is **granted**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:   August 10, 2009
Orig.:  Clerk
cc:     All Counsel of Record
        Hon. Mark Falk, U.S.M.J.
        File

8